AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
 )  Case No.  2:24-mj-8672
Gold Apple iPhone )
Model: Unknown )
Seized as FP& F: 2024255100018001 Item: 0001 )

**FILED**

Aug 06 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          s/ ClaudiaCarranza          DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Attached Affidavit of Border Patrol Agent Karla Buenrostro incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Fernando Quiroz
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___telephone___ *(specify reliable electronic means)*.

Date: ___08/06/2024___

_____
*Judge's signature*

City and state: ___El Centro, California___     HON. LUPE RODRIGUEZ JR., U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**  Gold Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 001
Seized from Veronica LARIOS-Flores
**(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 17, 2024, up to and including July 17, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

# AFFIDAVIT

I, Karla Buenrostro, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**  Gold Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 001
Seized from Veronica LARIOS-Flores
**(Target Device #1)**

**A-2:**  Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 002
Seized from Estela Yanek BARBOZA
**(Target Device #2)**

**A-3:**  Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 003
Seized from Estaban Ramon GONZALEZ-Candia
**(Target Device #3)**

**A-4:**  Blue Redmi Cellphone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 004
Seized from Veronica MARTINEZ-Hernandez
**(Target Device #4)**

**A-5:**  White Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 005
Seized from Agustin RAMIREZ-Mendoza
**(Target Device #5)**

1

as further described in Attachments A-1 to A-5, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B.

2. The requested warrant relates to the investigation and prosecution of Veronica LARIOS-Flores (LARIOS), Estela Yanek BARBOZA (BARBOZA), and Estaban Ramon GONZALEZ-Candia (GONZALEZ), for transporting and bringing in illegal aliens Veronica MARTINEZ-Hernandez (MARTINEZ), and Agustin RAMIREZ-Mendoza (RAMIREZ) (collectively, the "Material Witnesses"), in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from LARIOS, BARBOZA, GONZALEZ, and the Material Witnesses on or about July 16, 2024, incident to the arrest of LARIOS, BARBOZA, GONZALEZ, and the Material Witnesses. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4. I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since June 4, 2007, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The Border Patrol Academy curriculum covers specialized training in the

Immigration and Naturalization Act (INA), training in Titles 8,18, 19, 21 and 31 of the United States Code, criminal law, and statutory authority.

5. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California. I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7. The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the

arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

  a. tending to indicate efforts to smuggle aliens from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

  c. tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

  d. tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

  e. tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10. On July 16, 2024, The Calexico Station' Anti-Smuggling Unit was conducting surveillance in the East Desert of the Calexico Border Patrol Station's Area of Responsibility, approximately 32 miles east of the Calexico Port of Entry. This area of the border region consists mainly of spotted brush and open desert. In this area, there is an International Border Fence (IBF) that is approximately 20 feet tall. Interstate 8 (I-8) is approximately one -quarter mile north of the border and runs parallel to the IBF.

11. At approximately 8:04 a.m., an Air and Marine Operations helicopter observer (TROY) observed three suspected illegal aliens climb over the IBF and start running north towards I-8. This information was relayed to Agents in the field via service radio. BPA R. Valenzuela, who was working in the Remote Surveillance System (RVSS) room, obtained visual of three suspected illegal aliens. BPA Valenzuela observed one of the suspected

illegal aliens wearing a backwards ballcap and dark clothing and he appeared to be guiding the other two illegal aliens who were described as a female individual and a slightly larger male individual. BPA Valenzuela observed the male individual with the black ballcap appear to be talking on a cellphone as the reached I-8. Once the suspected illegal aliens reached I-8, they attempted to conceal themselves in some brush.

12. At approximately 8:20 a.m., BPA Valenzuela and TROY observed a dark Sports Utility Vehicle (SUV), later determined to be a Hyundai Sante Fe, stop on the shoulder of the eastbound lanes of I-8 slightly east of the suspected illegal aliens. The Hyundai then drove on the shoulder in reverse while the suspected illegal aliens got up and began running east towards the SUV before boarding the Hyundai. They Hyundai then merged back onto I-8 and continued eastbound.

13. BPA W. Carlton merged onto I-8 eastbound and attempted to locate the Hyundai. BPAs temporarily lost visual of the Hyundai until BPA Carlton observed a SUV, determined to be the Hyundai Sante Fe, exit at the Andrade eastbound offramp, drive north over the overpass and then merge back on I-8 westbound. BPA Carlton crossed the median and merged into the westbound lanes behind the Hyundai before activating the emergency lights and siren on his service vehicle to initiate a traffic stop. BPA Carlton approached the front passenger, BARBOZA, and the driver, LARIOS, and announced himself as a BPA. BARBOZA and LARIOS were determined to be lawfully present in the United States. LARIOS stated she did not know the backseat passengers but that she saw them on the side of the highway, and they needed a ride. BPA A. Gaytan approached the back seat passengers and observed all three back and seat passengers, later identified Estaban Ramon GONZALEZ-Candia, Veronica MARTINEZ-Hernandez and Augustin RAMIREZ-RAMIREZ-Mendoza, were determined to be citizens of Mexico illegally present in the United States. Agents noted GONZALEZ matched the description of the individual that appeared to be guiding the other two illegal aliens prior to boarding the Hyundai. LARIOS,

6

BARBOZA, GONZALEZ, MARTINEZ and RAMIREZ were placed under arrest and were transported to the Calexico Border Patrol Station for processing.

14. At the Border Patrol Station, Agents received information that earlier the same day, Imperial Irrigation District (IID) had observed an individual in a security camera cutting locks on the IID Drop 3 north gate. IID provided two photographs of the individual from the security camera and Agents noted the individual bears strong similarities to GONZALEZ in appearance and clothing. During processing, GONZALEZ was advised of his Miranda rights. GONZALEZ acknowledged his rights and agreed to make a statement without an attorney present. GONZALEZ stated he is a citizen of Mexico. GONZALEZ stated he left Mexicali with the intent to illegally cross into the United States to seek employment.

15. At the Border Patrol Station, BARBOZA was advised of her Miranda rights. BARBOZA acknowledged her rights and agreed to make a statement without an attorney present. BARBOZA admitted she agreed to assist LARIOS to pick up and transport illegal aliens for monetary gain. BARBOZA admitted she knows it is a crime to pick up and transport illegal aliens in the United States. BARBOZA stated that she was assisted with today's alien smuggling event by a friend via cellphone.

16. Material Witness RAMIREZ-Mendoza stated he made smuggling arrangements to cross illegally into the U.S. and agreed to pay a smuggling fee of $11,000.00 United States Dollars (USD) to the unknown smuggler when he arrived in Los Angeles, California. RAMIREZ stated he was guided north to the paved road and to the load vehicle by a thin male in the group wearing a black shirt. RAMIREZ sated that thin male wearing the black shirt crossed illegally into the U.S. with him and another female individual. RAMIREZ stated the thin male was the only one with an active cellphone during the smuggling event. RAMIREZ stated minutes after they arrived as the paved road, the thin male guided all of them towards the load vehicle. RAMIREZ stated as he boarded

7

the load vehicle, he observed a female driver with blond hair and another female front seat passenger with dark hair. RAMIREZ stated before boarding the load vehicle, he heard someone from the front seat instruct all of them to get inside the vehicle.

17. Material Witness MARTINEZ-Hernandez stated she traveled to Mexicali with the intent to illegally cross into the United States and her destination to Los Angeles, California with the intent to seek employment. MARTINEZ stated her smuggling arrangements were coordinated by her sister's husband and her parents agreed to pay a smuggling fee of $250,000 Mexican Pesos once she arrived in Los Angeles, California. MARTINEZ stated she was guided the entire way to the paved road and to the load vehicle by a thin male wearing a black shirt from the group. MARTINEZ stated the thin male wearing the black shirt crossed illegally into the U.S. with her and another male individual. MARTINEZ stated the thin male was the only one with an active cellphone during the smuggling event. And that both her and the other male individual had their cellphones off. MARTINEZ stated minutes after they arrived at the paved road, she observed a vehicle stop near their location and the thin male guided all of them towards the load vehicle. MARTINEZ identified Photo #3 from the Photo Line-up C as the thin male wearing the black shirt that guided her group to the load vehicle. Photo #3 depicts Estaban Ramon GONZAELZ-Candia.

18. During a search incident to arrest of LARIOS, BARBOZA, GONZALEZ, and the Material Witnesses, five cell phones were found: a gold Apple iPhone (Target Device #1) was found in LARIOS' hand by BPA C. William and LARIOS claimed ownership of this phone. A black Apple iPhone (Target Device #2) was found on BARBOZA's person by BPA C. William and BARBOZA claimed ownership of this phone. A Black Apple iPhone (Target Device #3) was found in GONZALEZ's hand by BPA A. Gaytan and GONZALEZ claimed ownership of this phone. A blue Redmi cellphone (Target Device #4) was found in the pocket of MARTINEZ's hoodie by BPA A. Gaytan and MARTINEZ

8

claimed ownership of this phone. A white Motorola cellphone (Target Device #5) was located in RAMIREZ's pants pocket and RAMIREZ claimed ownership of this phone. All cell phones were seized as evidence.

19. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the Target Devices for data beginning on June 17, 2024, up to and including July 17, 2024, the day after the arrest of LARIOS, BARBOZA, GONZALEZ, and the Material Witnesses.

## METHODOLOGY

20. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature, and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants, and have functions such as calendars and full address books, and can be minicomputers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic

hardware and software. Even if some of the stored information on the device may be acquired forensically, not all the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

21. Following the issuance of this warrant, a case agent familiar with the investigation will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephones, and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

22. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this Court.

//
//
//
//
//
//
//
//
//
//
//

10

## CONCLUSION

23. Based on all the facts and circumstances described above, I believe that probable cause exists to conclude that LARIOS, BARBOZA, GONZALEZ, and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by LARIOS, BARBOZA, GONZALEZ, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Fernando Quiroz, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 6th day of August, 2024.

_____ 11:23 a.m.
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

11

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Gold Apple iPhone
                  Model: Unknown
                  Seized as FP& F: 2024255400018001 Item: 001
                  Seized from Veronica LARIOS-Flores
                  **(Target Device #1)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**          Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 002
Seized from Estela Yanek BARBOZA
**(Target Device #2)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-3
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**       Black Apple iPhone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 003
Seized from Estaban Ramon GONZALEZ-Candia
**(Target Device #3)**




The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:** Blue Redmi Cellphone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 004
Seized from Veronica MARTINEZ-Hernandez
**(Target Device #4)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT A-5
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-5:**    White Motorola Cellphone
Model: Unknown
Seized as FP& F: 2024255400018001 Item: 005
Seized from Agustin RAMIREZ-Mendoza
**(Target Device #5)**



The **Target Devices** are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1 to A-5 include the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of June 17, 2024, up to and including July 17, 2024, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services such as email addresses, IP addresses, and/or phone numbers that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the Target Device;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.